UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

SURREY VACATION RESORTS, INC.,   )
d/b/a GRAND CROWNE RESORTS       )
                                 )
Plaintiff,                       )
                                 )
v.                               )      Case No. 6:15-CV-03218-DPR
                                 )
THE SURREY PHASE IV OWNERS'      )
ASSOCIATION, INC., d/b/a CARRIAGE )
PLACE OWNER ASSOCIATION, et al.  )
                                 )
Defendants and Third-party       )
Plaintiffs and Counterclaimants, )
                                 )
                                 )
                                 )
                                 )
v. LEON BASYE, et al.            )
                                 )
Third-party Defendants.          )
                                 )

## DEFENDANTS' FIRST AMENDED COUNTERCLAIMS AGAINST PLAINTIFF SURREY VACATION RESORTS, INC., AND DEFENDANTS' THIRD-PARTY CLAIMS AGAINST DEFENDANTS LEON BAYSE, CAPITAL RESORTS GROUP, LLC, CRG CLUB TRUST, INC., JASON SHROFF, DONALD MYERS, AND ALEX HODGES

COME NOW, The Surrey Phase IV Owners' Association, Inc., d/b/a Carriage Place

Owners Association, The Surrey Grand Crowne Resort Owners' Association, Inc., and The

Surrey Condominium Association, Inc., (hereinafter "Defendants/Counterclaimants" or "the

Associations") by and through counsel, and for their Counterclaims against Plaintiff Surrey

Vacation Resorts, Inc. (hereinafter "SVR") and their Third-Party Claims Against Defendants

Leon Bayse, Capital Resorts Club Group, LLC ("Capital Resorts"), Leon Bayse ("Bayse"), Jason

Shroff ("Shroff"), Donald Christopher Myers ("Myers"), Alex Hodges ("Hodges"), and CRG

1

Club Trust, Inc.   ("CRG Club Trust"), state and aver the following:

## GENERAL ALLEGATIONS

1. The Associations are three nonprofit condominium homeowners' associations organized pursuant to the Missouri Uniform Condominium Act (Section 448.1-448.4 R.S.Mo., *et seq.*) and the Missouri Nonprofit Corporation Act (Section 355, R.S.Mo.).

2. SVR is a Missouri corporation with its principal place of business located in Branson, Taney County, Missouri.

3. SVR was the Developer/Declarant of The Surrey Phase IV Condominium (aka "Carriage Place"), The Surrey Grand Crowne Resort Owners' Association (aka "Grand Crowne"), and The Surrey Condominium Association (aka "Surrey" or "the Townhouses"). The three developments are collectively referred to herein as "the Surrey Branson Resorts".

4. SVR was and currently is, involved in the business of selling timeshare inventory in the three Condominium projects referenced in paragraph 3 above, as well as selling inventory in other developments located in Pigeon Forge, TN and Biloxi, MS.

5. From approximately April 1993 until August 2011, SVR controlled the three Associations, paid itself to manage the Associations, and acted as the exclusive Developer/Declarant and sales entity engaged in marketing and selling timeshare interests in the three Condominium projects referenced above.

6. Sometime prior to August of 2011, owners in the three Associations discovered

that SVR had misappropriated millions of dollars from the general funds intended for common area maintenance, insurance and operational expenses for the Associations (hereinafter the "Misappropriations").

7.    The full extent and amount of the Misappropriations is not known to the Associations, but upon information and belief totaled approximately $8,000,000 to $9,000,000 (nine million dollars).

8.    Upon information and belief, the Misappropriations were used to pay the private business expenses of SVR, to finance construction of SVR's timeshare development in Pigeon Forge, Tennessee.

9.    When the owners of the individual timeshare interests began to discover the Misappropriations, SVR offered to settle the matter by: (a) turning over control of the three Associations to the rank and file timeshare owners; (b) agreeing that SVR and its affiliated persons would step down from the Board of Directors of the three Associations; and (c) that the rank and file owners could elect a Board of Directors comprised of persons completely independent of SVR, its employees and affiliates.

10.    This settlement was memorialized in three separate (but nearly identical) agreements – one for each of the three Associations – that were drafted by SVR's general in-house counsel.   The three agreements will be referred to hereinafter as "the Transfer and Turnover Agreements".

11.    The Transfer and Turnover Agreements were executed by the new Board of Directors of the three Associations and SVR in August 2011.

12. The consideration provided by SVR for the Transfer and Turnover Agreements was twofold: (a) SVR agreed that the SVR-appointed directors on the Board would resign and be replaced by "persons unaffiliated with the Developer"; and (b) SVR would pay 5.6 million dollars (divided among the three Associations) for a "full satisfaction and release" of any and all claims that the three Associations had against SVR including, but not limited to, the Misappropriations.

13. The Associations relied on SVR's agreement that it would no longer control the appointment of the Board of Directors of the Association in releasing its claims against SVR.

14. SVR has an ongoing business relationship with Capital Resorts to sell timeshare inventory in the three Branson Resorts, and with CRG Club Trust Inc. to hold title to said inventory and to vote the interests of said inventory at the annual meetings/elections of the three Associations.

15. Defendant Leon Bayse (hereinafter "Bayse") is the Trustee for CRG Club Trust, Inc. and has a vested business interest in said Trust in that he receives a salary as Trustee and Bayse also profits from sales transactions involving the Trust, because the Trust uses a title company that he owns (Stewart Title, Inc.) exclusively.

16. Capital Resorts is a Delaware limited liability company that is registered with the Missouri Secretary of State as a foreign LLC, and regularly conducts business in Missouri.

17. Capital Resorts has a contractual relationship with both SVR and CRG Club

Trust, Inc.

18.     Upon information and belief, Capital Resorts is owned and operated by Defendant Jason Shroff, who is a resident of Myrtle Beach, Horry County, South Carolina ("Shroff").

19.     SVR contracts with CRG, LLC to sell its inventory in the Branson Surrey Resorts.

20.     Donald Christopher Myers ("Myers") is a resident of St. Petersburg, Pinellas County, Florida.

21.     Upon information and belief, Myers is employed by Capital Resorts as the Chief Operating Officer, and performs work for SVR.

22.     Myers also acts as SVR's "Developer Designee" attending Board meetings of the Associations on behalf of SVR.

23.     Alex Hodges ("Hodges") is a resident of Branson, Taney County, Missouri and is employed by Plaintiff, SVR.

24.     Upon information and belief, Shroff instructed Capital Resorts employees and agents, including Myers, to contact and target elderly timeshare unit owners ("Unit Owners") in person and via telephone and state the following to Unit Owners: that Capital Resorts is taking over the Surrey Branson Resorts; that the owners must trade in their deeds for beneficial interests in the Capital Resorts Trusts; and that Capital Resorts will pay maintenance fees associated with the timeshare interests.

25.     Upon information and belief, Shroff, Bayse, and SVR devised this scheme of contacting timeshare owners and defrauding them to transfer their interests in the

timeshares to Capital Resorts as an attempt to gain voting power and ultimately control the Associations.

26. Upon information and belief, Bayse agreed to and advanced this scheme by processing all deed transfers through his company, Stewart Title Company.

27. Upon information and belief, SVR and Hodges advanced this scheme by contacting Unit Owners in person and via telephone between January 2014 and present and stating the following to Unit Owners: that Capital Resorts is taking over Surrey Branson Resorts; that the owners must trade in their deeds for beneficial interests in the Capital Resorts Trusts; that Capital Resorts will pay maintenance fees associated with the timeshare interests.

28. Hundreds of unit owners were contacted by SVR, Capital Resorts, Hodges, and Myers between January 2014 and present. The Associations have received several complaints from the Unit Owners, including complaints from Thomas Reynolds, Darren and Jane Griffen, William and Phyllis Ware.

29. These Unit Owners had a recorded timeshare interest in Surrey Resorts at the time they were contacted by SVR, Capital Resorts, Myers, and Hodges.

30. Based on the representations made by SVR, Hodges, Myers, and Capital Resorts, the Unit Owners transferred their timeshare interests to Capital Resorts.

31. As part of their scheme, SVR, Schroff, Hodges, Myers, Capital Resorts, and CRG Group Trust would intentionally delay the recording and processing of the deeds by as long as six months.

32. The intentional delay of processing and recording the deeds was to prevent or

frustrate the collection of maintenance fees on the timeshare units by the Associations.

33. Because the deed transfers were not being recorded in a timely manner, the Associations sent out collection notices to the Unit Owners.

34. The Unit Owners refused to pay the maintenance fees due to the fact that they had transferred their interests in the units to Capital Resorts and Capital Resorts promised that they would no longer be responsible for paying said maintenance fees.

35. SVR is currently delinquent over $250,000.00 in maintenance fees owed to the Associations.

36. The reputation of the Associations have also been damaged by SVR, Schroff, Myers, Capital Resorts and CRG Group Trust in that SVR and Capital Resorts told the Unit Owners that they were the Associations and did not perform as promised.

37. Capital Resorts transferred the timeshare interests to CRG Group Trust.

38. CRG Group Trust has gifted timeshare interests in exchange for no consideration to SVR agents and employees and has nominated SVR agents and employees for positions on the Board of Directors of the Associations.

39. The Unit Owners have been deprived of their ability to vote at meetings by deeding their interests to Capital Resorts in exchange for a beneficial interest in CRG Trust.

40. CRG Trust does not vote in accordance with the wishes of the Unit Owners.

41. SVR, Schroff, Myers, Capital Resorts, Hodges and CRG Group Trust participated in this scheme in an attempt to gain control of the Associations' Board of Directors.

42. Venue and jurisdiction for this suit are proper in Taney County Circuit Court as the real estate at issue is located in Taney County, Missouri; the Plaintiff has its principal place of business located in Taney County, Missouri, the majority of the acts described herein took place in Taney County, Missouri and the principal place of business of the three Associations is located in Taney County, Missouri.

## COUNT I

**BREACH OF CONTRACT OR IN THE ALTERNATIVE FRAUD IN THE INDUCEMENT
(AGAINST SURREY VACATION RESORTS INC., ONLY)**

43. The allegations of paragraphs 1 through 42 above are incorporated by reference as if fully set forth herein.

44. The Associations settled their claims for Misappropriation of the Associations' against SVR for 5.6 million dollars, which, upon information and belief, was anywhere from 2 to 3.4 million dollars less than the amount believed to be missing from the Associations' general accounts.

45. As additional consideration for the Transfer and Turnover Agreement, SVR agreed that; (a) "Developer-appointed Directors would resign" from the three Associations' Board of Directors; and; (b) That "[P]ersons **unaffiliated** with the Developer would be elected to the Associations' Board of Directors." [Emphasis added].

46. It was the intent of the Associations in agreeing to the Transfer and Turnover Agreement that SVR would transfer and turnover its power to control the Board of Directors of the Associations and that from that point forward, only persons unaffiliated with Developer would be elected to the Associations' Board of Directors.

47. SVR knew that it intended to breach the agreement when it represented that its affiliates would resign from the Board and only non-affiliates would be nominated to the Boards in the future.

48. The Associations relied on the representation that only persons unaffiliated with the Developer would be elected to the Associations' Board of Directors when signing the Transfer and Turnover Agreement.

49. Under the Missouri Uniform Condominium Act, an "affiliate of declarant" means: any person who controls, is controlled by, or is under common control with declarant." Mo. Rev. Stat. § 448.1-103(1).

50. Black's Law Dictionary (West, 1990), states that "affiliate" means " a condition of being united; being in close connection, allied, associated or attached as a member or branch".

51. Capital Resort and CRG Club Trust are affiliated with SVR via contractual arrangements to sell and hold its inventory of timeshare units in the three Associations, and are acting in concert with SVR with power to vote to control the nomination and election of the Boards of Directors of the Associations.

52. Despite this covenant in the Transfer and Turnover Agreement, SVR, Capital

Resorts and CRG Club Trust Inc., breached the agreement by attempting to nominate a slate of their employees to the Boards of Directors of the Associations until they were enjoined from doing so by a Court in Taney County.

53.   Myers, Hodges, Bayse, SVR and Capital Resorts disrupted the annual meeting on March 3, 2015, by attempting to nominate non-qualified employees of SVR and Capital Resorts to the three Associations' Board of Directors.

54.   SVR, in conveying its inventory via Capital Resorts to CRG Trust is using CRG Trust as a proxy or shill to avoid its obligations under the Transfer and Turnover Agreement and prohibitions against Developer affiliates being nominated to and/or serving on the Associations' Board of Directors.

55.   Through the process of conveying its inventory to CRG Trust and through defrauding owners and victims of high-pressure sales tactics to convince owners (most of whom are elderly) to deed their timeshare interests to CRG Club Trust, SVR and CRG Club Trust are quickly eroding the power of the rank-and-file unit owners.

56.   After conveying their deeds to CRG Club Trust, the owners can no long vote on Association matters and CRG Club Trust is quickly gaining a majority of votes with which they plan to dissolve the current Board of Directors and take control of the Association.

57.   The Associations have complied with their obligations under the Transfer and Turnover Agreements.

58.   The Associations have been damaged by SVR's breach in the difference between

the amount of the Misappropriations and the $5.6 million paid to the Associations in August 2011.

59. Upon information and belief, the amount of the Associations' damages total a monetary amount of no less than $2.4 million.

60. The Associations seek punitive damages against Plaintiff Surrey Vacation Resorts, Inc., in order to deter similarly situated individuals and companies from engaging in like conduct in the future.

**WHEREFORE**, the Associations request that this Court find in favor of the Association on Count I herein, award the Associations their damages incurred as a result of Plaintiff's breach of contract; for punitive damages in an amount sufficient to deter like conduct in the future, for their costs incurred herein, and for such other and further relief as this Court deems necessary under the circumstances.

## COUNT II

### CIVIL CONSPIRACY FOR TORTIOUS INTERFENCE WITH A CONTRACT AGAINST ALL THIRD-PARTY DEFENDANTS

61. The Associations restate paragraphs 1 through 60 above as if fully set forth herein.

62. Upon information and belief, Hodges, Shroff, Myers, Bayse, CRG Club Trust and Capital Resorts (" Third-party Defendants") conspired to relieve SVR of its obligations under the Transfer and Turnover Agreements, thereby causing SVR to breach its obligations to the Associations.

63. Said scheme involved, among other things, the conveyance of timeshare units in

11

the Branson Surrey Resorts to Hodges, Myers and employees of CRG Club Trust, and Capital Resorts and SVR for no consideration whatsoever, so that said employees would be in a position to vote for the Board of Directors of the three Associations and take governing control of the Associations away from the rank-and-file owners.

64. SVR, CRG Club Trust, Capital Resorts, Hodges, Shroff, and Myers agreed that they would solicit timeshare unit owners to convey their interest to Capital Resorts and then Capital Resorts would transfer the interests to CRG Trust. CRG Trust would then appoint individuals approved by SVR as nominees to run for the Board of Directors of the Associations.

65. Said scheme devised by SVR and Third-party Defendants was to circumvent the agreement between SVR and the Associations whereby SVR agreed that it or its affiliates would not be on the Board of Directors of the Associations.

66. In soliciting the transfer of timeshare units from rank and file unit owners, Capital Resorts and SVR made several false representations to Unit Owners.

67. The transfer of timeshares by Unit Owners was solicited by SVR and Capital Resorts in attempt to gain voting power.

68. SVR, CRG Club Trust, Capital Resorts, Hodges, Myers, and Shroff conspired to try to remove the Board of Directors of all three Associations at the Annual Meetings on March 3, 2015, by attempting to usurp the floor, speaking out of order and shouting above the meeting chairperson to try to remove the legitimate Board from office.

69.   Because of SVR's and Third-party Defendants conduct at the meeting, the Grand Crowne Resort Owner's Association had to postpone their meeting.

70.   Because the Grand Crowne Resort Owner's Association had to postpone their meeting, they were unable to accomplish the items on their agenda.

71.   In order to accomplish the items on their agenda, Grand Crowne Resort Owner's Association will have to mail out notice and reserve a venue for the meeting.

72.   Grand Crown Resort Owner's Association will incur additional costs in mailing out the notice and reserving a venue for the meeting.

73.   Once removed from the Annual Meeting by security, Bayse, Hodges, and Myers proceeded to have a private "election" in the lobby outside of the legitimate board meeting, where they claim to have elected a new slate of directors and claiming that the existing Board of Directors had been dissolved and removed from office.

74.   After March 3, 2015, Bayse, Hodges and Myers (acting both on their own and as representatives for SVR, CRG and Capital Resorts), authorized a letter to be written to U.S Bank (which holds the bank accounts for all three Associations) purporting to be the Board of Directors of Grand Crowne and Surrey Associations, prompting U.S. Bank to freeze the Associations' accounts until a court in Taney County enjoined Counterclaim Defendants from making such claims.

75.   A court in Taney County, Missouri, has now enjoined SVR and its affiliates from purporting to be the legitimate Board of Directors for the three Associations.

76.   The Associations, have been, and continue to be, harmed by the conduct of the

counterclaim defendants as follows:

(a) The Associations have incurred approximately $20,000.00 in administrative costs attempting to work with owners/consumers complaining about the annual meeting and the disruptions and will incur costs for mailing out notice and reserving a venue for the next meeting;

(b) The Associations have incurred over one hundred thousand dollars in attorney's fees and been forced to litigate to attempt to bring Counterclaim Defendants' interference with the Association to a halt.

(c) The reputations of the Branson Surrey Resorts have been damaged pursuant to the aforementioned conduct of Counterclaim Defendants, resulting in unpaid maintenance fees from owners in amounts exceeding $500,000.

(d) As a direct result of the Counterclaim Defendants' investment of the actions, the Associations have lost maintenance fee income that could have been used to maintain and improve the resorts and pay employees; and

(e) The rank-and-file ownership in the Associations is dwindling, and Capital Resorts and CRG Club Trust, Inc. are poised to take control of the voting rights and nominations for the Board of Directors of the Associations.

**WHEREFORE**, the Associations request that this Court:

(a) find in favor of the Associations on Count II herein,

(b) award the Associations their damages incurred as a result of Third-party Defendants' conduct;

(c) for punitive damages in an amount sufficient to deter like conduct in the

future,:

(d) for their costs incurred herein, and

(e) for such other and further relief as this Court deems necessary and proper under the circumstances.

## COUNT III: VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT AGAINST CAPITAL RESORTS AND SVR

77. The Associations restate Paragraphs 1 through 76 above as if fully set forth herein.

78. Section 448.3-102.1(4), RSMo., authorizes the Association to "institute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium."

79. The Missouri Merchandising Practices Act, Section 407.020, RSMo., et seq. ("the Act"), states in relevant part:

"The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection wit the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the State of Missouri, is declared to be an unlawful practice."

80. Section 407.010 of the Act defines "Merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services."

81. On or around January 2014 through present, Capital Resorts and SVR represented to hundreds of Unit Owners, including Thomas Reynolds, Darren and Jane Griffen, William and Phyllis Ware that: Capital Resorts is taking over Surrey Branson Resorts; that the owners must trade in their deeds for beneficial interests

15

in the Capital Resorts Trusts; that Capital Resorts will pay maintenance fees associated with the timeshare interests.

82. Capital Resorts and SVR knew these representations were false.

83. Such representations were made with the purpose of obtaining the unit owners' interest in the units and voting power.

84. SVR's and Capital Resort's conduct was willful and malicious.

85. The Unit Owners relied on such representation in deciding to convey their timeshare interests to Capital Resorts.

86. Capital Resorts and SVR did not transfer the deeds or pay the maintenance fees associated with the condominium units as represented.

87. As a result of the misrepresentations, the Unit Owners and the Associations have been damaged in that the Unit Owners transferred their ownership interests to Capital Resorts and Capital Resorts and SVR did not pay maintenance fees to the Associations. The Associations have been damaged in that they have not been paid the maintenance fees owed to the Associations pursuant to the Declarations.

88. The Associations have incurred approximately $20,000.00 in administrative costs directly associated with addressing the issues caused by Capital Resort's and SVR's misrepresentation.

89. The Associations have incurred over $100,000.00 in attempting to halt Capital Resorts Group, LLC's and SVR's deceptive practices.

90. The reputations of the Associations have been damaged as a result of the Capital Resorts Group, LLC and SVR, resulting in unpaid maintenance fees in amounts

exceeding $500,000.00.

91. As a result of SVR's and CRG, LLC's misrepresentations, the Unit Owners and the Association have suffered monetary damages in an amount yet to be determined.

92. Pursuant to Section 407.577 of the Act, the Associations are entitled to recover their reasonable attorney's fees expended in the prosecution of this action.

WHEREFORE, the Associations ask that this Court:

    (a) find in favor of the Associations on Count III herein;

    (b) award the Associations their damages incurred as a result of Capital Resorts Group, LLC's and SVR's conduct;

    (c) for punitive damages in an amount sufficient to deter like conduct in the future;

    (d) for reasonable attorney's fees;

    (e) for their costs incurred herein; and

    (f) for such other and further relief as this Court deems necessary and proper under the circumstances.

## COUNT IV
## APPLICATION FOR PERMANENT INJUNCTION (AGAINST SVR and CRG CLUB TRUST ONLY)

93. The Associations restate Paragraphs 1 through 92 above as if fully set forth herein.

94. SVR and CRG Club Trust have caused correspondence to be sent to the banking institutions of the Grand Crowne and Surrey Associations, claiming to be the new

boards of directors, when they have no legal authority to represent the Associations.

95. Said correspondence sent by SVR and CRG Club Trust to the banking institutions caused U.S. Bank to freeze the Associations' general operating account, effectively shutting down three multi-million dollar resorts and prohibiting the Associations from paying expenses, including payroll.

96. SVR's and CRG Club Trust's attempts to dissolve the Board of Directors was malicious, illegal, void, and did not comply with Missouri law for removing directors of condominium associations as set forth in Sections 448.3-108, RSMo., or removal of directors of nonprofit Associations as set forth in Section 355.346(5), RSMo.

97. The Missouri Uniform Condominium Act states that "The notice of any meeting shall state the time and place of the meeting and the items on the agenda, including the general nature of any proposed amendment to the declaration or bylaws, any budget changes, and any proposal to remove a director or officer." Section 448.3-108.

98. Section 355.346(5), RSMo., provides that: "A director elected by members may be removed by the members only at a meeting called for the purpose of removing the director and the meeting notice must state that the purpose, or one of the purposes, of the meeting is the removal of the director."

99. SVR and CRG Trust Club did not provide notice of a meeting stating that the purpose of the meeting was to remove the directors.

100. The Associations have no adequate remedy at law and the Associations will suffer irreparable injury if they are not allowed access to the funds in their bank accounts.

101. The status quo is that the Boards of the Association as they existed on March 2, 2015, have governed the Associations for the past three years.

102. The Associations are entitled to their reasonable attorney's fees in prosecuting this action.

WHEREFORE, the Associations request that this Court enter its order restraining SVR and CRG and their agents and companies which they control from purporting to act on behalf of the Board of any of the three Associations' business or the Boards as they were constituted on March 2, 2015, in any way; from contacting any agent of the Associations claiming to be the Board of Directors of the Associations; from contacting any banking or financial institution where the Associations hold deposit accounts, other than to retract previous statements claiming to be the new and duly constituted Board of Directors, or from otherwise interfering with the business of the existing Boards and Associations; and for punitive damages in an amount sufficient to deter other similarly situated individuals from engaging in like conduct in the future

## COUNT V: DECLARATORY JUDGMENT AGAINST SVR ONLY

103. The Associations restate Paragraphs 1 through 102 above as if fully set forth herein.

104. The Uniform Condominium Act, Section 448.3-103(4) states in relevant part:

"Regardless of the period provided in the declaration, a period of declarant

control terminates no later than the earlier of (1) sixty days after conveyance of seventy-five percent of the units which may be created to unit owners other than a declarant; (2) two years after all declarants have ceased to offer units for sale in the ordinary course of business; or (3) two years after any development right to add new units was last exercised. A declarant may voluntarily surrender the right to appoint and remove officers and members of the executive board before termination of that period. . . ."

105. It has been more than sixty days since the initial conveyance of at least seventy-five percent of the units created have been conveyed; and

106. It has been more than two years since Declarant (SVR) has exercised any development right to add new units; and

107. Declarant (SVR) voluntarily surrendered its right to appoint and remove officers and members of the executive board when it signed the Transfer and Turnover Agreement with the Associations in August 2011.

108. SVR continues to attempt to appoint and remove officers from the executive board by soliciting unit owners to transfer their ownership interest to Capital Resorts which is affiliated with and/or controlled by SVR. Through such conduct, SVR is able to obtain voting power at meetings and exercisebs such power through CRG Club Trust.

109. A justiciable controversy exists in that the Association has a legally protectable interest at stake and a substantial controversy exits between the parties.

110. The Associations and SVR have genuinely adverse interests and this controversy

20

is ripe for judicial determination.

111.   The Associations are entitled to recover their costs incurred herein, pursuant to

Section 527.100, RSMo.

WHEREFORE, the Associations request that this Court enter its Judgment

in favor of the Associations and against SVR, declaring that SVR no longer has

the right to appoint or remove officers and directors of the Associations, for the

Association's costs incurred herein, and for such other and further relief as this

Court deems reasonable and proper under the circumstances.

DEFENDANTS/COUNTERCLAIMANTS/THIRD-PARTY PLAINTIFFS DEMAND A JURY

TRIAL ON COUNTS I-III.

SCHENEWERK & FINKENBINDER
ATTORNEYS AT LAW, LLC

BY: _____

Russ Schenewerk, MO BAR #51178
500 West Main Street, Suite 305
Branson, MO 65616
(417)334-7922 Office
(417)334-7923 Facsimile
russ@sfalawfirm.com
Attorney for Counterclaimants

## CERTIFICATE OF SERVICE

I hereby certify that on this 16 day of June 2015, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Britton Jobe & Daniel K. Wooten
Neale & Newman, LLP
One Corporate Center
1949 East Sunshine, Ste. 1-130
P.O.Box 10327
Springfield, MO 65808
Attorneys for Surrey Vacation Resorts, Inc.

Brett W. Roubal, Katherine O'Dell,& Patrick Baird
Baird, Lightner Millsap, PC
1901 South Ventura Avenue
Suite C
Springfield, MO 65804
Attorneys for Leon Bayse and CRG Club Trust,

Daniel McClain
The McClain Law Firm, LLC
9229 Ward Parkway, Ste. 370
Kansas City, MO 64114
Attorney for Capital Resorts Group, LLC, Jason Shroff, and Donald Myers

Eric Fisher & John Gross
1600 Parkwood Circle
Suite 400
Atlanta, GA 30339
Attorneys for Capital Resorts Group, LLC, Jason Shroff and Donald Myers

I hereby certify that on this 16 day of June 2015, a copy of the foregoing was mailed to the following pro se party:

Alex Hodges
430-C State Hwy. 165 South
Branson, MO 65616

By: _____
Russ Schenewerk, MO BAR #51178