IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

SURREY VACATION RESORTS, INC., )
d/b/a GRAND CROWNE RESORTS, )
                                    Plaintiff and )
                                    Counterclaim Defendant, )

v. )   Case No. 15AF-CC00257

THE SURREY PHASE IV OWNERS' )
ASSOCIATION, INC., d/b/a CARRIAGE )
PLACE OWNER ASSOCIATION, et al., )
                                    Defendants and Third-Party )
                                    Plaintiffs and )
                                    Counterclaimants, )

v. )

LEON BASYE, et al., )
                                    Third-Party Defendants. )

**PLAINTIFF'S AND THIRD-PARTY DEFENDANT'S
SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS**

**COME NOW** Plaintiff and Third-Party Defendant, Alex Hodges, by and through undersigned counsel, and for their Suggestions in Support of their Motion to Dismiss Defendants' First Amended Counterclaims and Third Party Claims ("Amended Counterclaim"), state as follows.

A. **Count I of the Amended Counterclaim Should be Dismissed**

Count I of the Defendants' Amended Counterclaim fails to state a claim for breach of contract upon which relief may be granted. In order to plead a proper breach of contract claim, the Defendants must plead: (1) the existence of a valid contract; (2) the rights and obligations of

1

each party; (3) a breach; and (4) damages. *See Evans v. Werle,* 31 S.W.3d 489, 493 (Mo.App. W.D.2000). The Defendants' Court I fails because they cannot plead any obligation of Plaintiff or of any Third Party Defendant that has been breached.

First, the only party to the Transfer and Turnover Agreements[1] other than the Defendants themselves is Plaintiff Surrey Vacation Resorts, Inc. ("SVR"). While the heading to Count I only refers to SVR, Paragraph 52 of the Amended Counterclaim refers to an alleged breach of the Transfer and Turnover Agreements by "SVR, Capital Resorts Group, LLC and CRG Club Trust, Inc." However, it has long been a basic tenet of contract law that "one not a party to a contract is not bound thereby and is not liable for breach of a contract to which he is not a party." *Kahn v. Prahl*, 414 S.W.2d 269, 278 (Mo.1967). Therefore, to the extent Count I is construed as pleading a claim against Third Party Defendants Capital Resorts Group, LLC and/or CRG Club Trust, Inc., it must be dismissed.

Second, the plain language of the Transfer and Turnover Agreements demonstrate that SVR did not have the obligation alleged, specifically, to ensure that only "non-affiliates [of SVR] would be nominated to the [Board of Directors for the Associations] in the future." (Amended Counterclaim, ¶47). Further, the Transfer and Turnover Agreements have no language that can serve as the basis for the alleged breach—that SVR (and others) breached the agreement "by attempting to nominate a slate of their employees to the Boards of Directors [for the Associations] …." (Amended Counterclaim, ¶52). Instead, the plain language of the Transfer and Turnover Agreements show that the provisions quoted in Paragraph 45 of the Amended Counterclaim and serving as the basis of the alleged breach in Paragraph 52 of the

---

[1] The term "Transfer and Turnover Agreements" refer to those like-titled agreements attached to SVR's Petition against Defendants. [DOC 1, Attachment #1].

Counterclaim are limited to events which were to take place at a certain Special Meeting on August 23, 2011. The Transfer and Turnover Agreements clearly omit any language limiting by affiliation the persons who could be nominated to the Boards "in the future."

In fact, the language quoted by the Defendants in Paragraph 45 of the Amended Complaint, which supposedly establishes the obligation alleged to have been breached, is located within the recitals of the Transfer and Turnover Agreements. However, recitals are not strictly a part of a contract because they do not impose contractual duties on the parties. *G.H.H. Investments, L.L.C. v. Chesterfield Management Associates, L.P.*, 262 S.W.3d 687, 693 (Mo.App. E.D.2008). At worse, any contractual duty to have the "Developer-appointed Directors...resign" (Amended Counterclaim, ¶45) and allow "persons unaffiliated with the Developer" (*Id.*) to be elected to the Associations' Board of Directors was performed in full at the Special Meeting on August 23, 2011.

The Defendants' goal now, on terms conspicuously absent from the Transfer and Turnover Agreements, is to prevent SVR from nominating and voting for duly-qualified candidates of its own choosing, including candidates which may be affiliated with SVR, even though the Transfer and Turnover Agreements did not in any way restrict the right of SVR, or any other party, to do so. The Defendants cannot supplant the actual terms of the Transfer and Turnover Agreements with entirely different terms that would drastically restrict SVR's rights into the foreseeable future. The contractual duty of SVR is set out unambiguously in the Transfer and Turnover Agreements, and a plain reading of those agreements, shows SVR has not breached a contractual duty simply by attempting to exercise its right to make nominations and vote for members of the Defendants' respective Boards of Directors.

3

Case 6:15-cv-03218-BCW   Document 34   Filed 06/30/15   Page 3 of 11

Further, any claim for "fraud in the inducement" contained in Count I should be dismissed for failure to plead fraud with particularity. The elements for fraud under Missouri law require "a representation; that is false; that is material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent it be acted on; the hearer's ignorance of the falsity of the representation; the hearer's reliance; the hearer's right to rely on it; and injury." *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). The circumstances of each element must be stated with particularity. *Id.*; Rule 55.15; F.R.C.P. 9(b); *State ex rel. PaineWebber v. Voorhees*, 891 S.W.2d 126, 129 (Mo. banc 1995). Failure to plead any element renders the petition subject to dismissal. *Schauer v. Gundaker Movits Real Estate Co.*, 813 S.W.2d 112, 114 (Mo.App.1991).

There is an outright failure on the part of the Defendants to fulfil even the basic pleading requirements of fraud—relying instead on only the use of the term "fraud." Under any standard, the Defendants have not plead fraud with the requisite particularly; therefore Count I of the Amended Counterclaim, to the extent construed to include a fraud claim, must be dismissed.

### B. Count II of the Amended Counterclaim Should be Dismissed

Count II of the Amended Counterclaim, which purports to plead civil conspiracy based on tortious interference with a contract, should be dismissed because the allegations fail to state a claim upon which relief may be granted for the underlying tortious acts.

To demonstrate a civil conspiracy existed, a claimant must show: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) claimant was thereby damaged. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012). Although civil conspiracy has its own

4

elements that must be proven, it is not a separate and distinct action. *Id.* Rather, it acts to hold the conspirators jointly and severally liable for the underlying act. *Id.* "[I]f tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Id.* A case will be dismissed if a plaintiff fails to plead a cause of action for the underlying tort. *Hibbs v. Berger*, 430 S.W.3d 296, 320 (Mo. Ct. App. 2014).

In order to establish a claim of tortious interference under Missouri law, the following elements must be established: (1) a contract or a valid business relationship or expectancy (not necessarily a contract); (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from defendant's conduct. *Salomon v. Crown Life Ins. Co.*, 536 F.2d 1233, 1238 (8th Cir. 1976). Where both the plaintiff and defendants are parties to the contract at issue, the defendants' breach cannot be the basis of a cause of action for tortious interference with a business or contractual relationship. *Lick Creek Sewer Systems, Inc. v. Bank of Bourbon,* 747 S.W.2d 317, 322 (Mo. App. S.D. 1988). Similarly, where an individual being sued is an agent of the defendant party allegedly in breach, and is acting for that party, the agent is considered the same as the defendant for purposes of tortious interference, and the action will not lie against that individual. *Oliver v. Ford Motor Credit Co., LLC*, 437 S.W.3d 352, 360 (Mo. Ct. App. 2014).

Defendants' purported claim for civil conspiracy fails because the alleged underlying tort fails. First, as discussed with Count I, the Amended Counterclaim fails to state a cause of action for breach of contract, so Defendants cannot establish the breach element required for a claim of tortious interference. Second, even assuming any breach occurred, the Amended Counterclaim

5

does not set out any separate count for tortious interference with a contract nor do Defendants state such a cause of action in Count II. The allegations fall far short of asserting tortious interference with a contract, stating only that "Hodges, Shroff, Myers, Bayse, CRG Club Trust, and Capital Resorts ('Third-party Defendants') conspired to relieve SVR of its obligations under the Transfer and Turnover Agreements, thereby causing SVR to breach its obligations to the Associations." Since the tortious acts alleged fail to state a cause of action, the overarching conspiracy claim fails as well, and the Count II conspiracy claim should be dismissed. *Hibbs*, 430 S.W.3d at 320.

Furthermore, Defendants' characterization of the relationship between SVR and the other Third-Party Defendants itself defeats the conspiracy claim. Defendants assert that the "affiliation" between SVR, Capital Resorts Groups, LLC, and CRG Club Trust, Inc. is so direct that it is a violation of the Turnover and Transfer Agreements for SVR to approve those entities' nominees to the Board of Directors. (See Amended Counterclaim, ¶¶ 49-51, 64). In essence, Defendants assert in Count I that the Third-Party Defendants are acting as agents or affiliates of SVR, then in Count II, Defendants allege those same parties were all part of a conspiracy to "relieve SVR of its obligations under the Turnover and Transfer agreements." However, as a general rule, there can be no conspiracy between an agent and a principal. *Mika v. Central Bank of Kansas City,* 112 S.W.3d 82, 94 (Mo.App.2003). Furthermore, "[t]wo entities that are not legally distinct cannot conspire with one another." *Id.*

Moreover, Defendants include SVR in Count II as part of the supposed conspiracy for tortious interference. As a party to the Turnover and Transfer Agreements, any "breach" by SVR cannot be the basis of its own liability in an action for tortious interference with a contract.

6

Similarly, to the extent Defendants allege the individual Third-Party Defendants were acting as agents of SVR, the individual Third-Party Defendants are considered the same as SVR for purposes of tortious interference, and the action will not lie. See *Oliver v. Ford Motor Credit Co., LLC*, 437 S.W.3d 352, 360 (Mo. Ct. App. 2014).

Read as a whole, Count II of the Amended Counterclaim clearly alleges (although erroneously) that SVR was motivated to avoid its obligations under the Turnover and Transfer Agreements, which then led to the Third-Party Defendants' alleged actions. As a matter of logic, the Third-Party Defendants cannot be liable for inducing a breach when their alleged actions were the result, rather than the cause, of SVR's supposed intent to avoid its contractual obligations.

For all of these reasons, the civil conspiracy claim fails and must be dismissed.

### C. Count III of the Amended Counterclaim Should be Dismissed

Count III of the Defendants' Amended Counterclaim, for "violation of the Missouri Merchandising Practices Act" should be dismissed because (1) Defendants lack standing, and (2) there is no ascertainable loss to the Unit Owners.

First, Defendants lack standing to bring the purported cause of action. "[A]n association has standing to assert a cause of action on behalf of its members if: (1) its members would otherwise have standing to bring suit in their own right; (2) the interest it seeks to protect is germane to the organization's purpose; (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Missouri Outdoor Advertising Assn., Inc. v. Missouri State Highways and Transportation Commn.*, 826 S.W.2d 342, 344 (Mo. banc 1992).

The Defendants lack standing to bring the claim asserted in Count III under the MMPA because the claim asserted and relief requested requires the participation of individual members in the lawsuit. By its nature, the MMPA contemplates the participation of individuals who have been parties to a sale; it "grants an individual 'who purchases or leases merchandise ... and thereby suffers an ascertainable loss of money or property' the right to pursue a private cause of action based on a violation of the MMPA." *Bolt v. Giordano*, 310 S.W.3d 237, 247 (Mo. Ct. App. 2010)

In *Hoag v. McBride & Son Inv. Co* the court found that an association lacked standing to bring a cause of action for misrepresentation as it would depend on different representations allegedly made by the defendants to different prospective homebuyers at different times over a period of approximately ten years. 967 S.W.2d 157, 173 (Mo. Ct. App. 1998). Also, the association would have to establish that each prospective homeowner heard the alleged misrepresentations and the damages that each homeowner suffered. *Id*. Thus, the prosecution of the misrepresentation claims would require the participation of each individual homeowner. Therefore, the association, through its trustees, did not have standing to assert the misrepresentation claims. *Id*.

Similarly in this case, the Defendants purport to state a cause of action under the MMPA for making misrepresentations to "hundreds of Unit Owners." (Amended Counterclaim, ¶ 81). Additionally, the Defendants allege that the various owners have been damaged through the transfer of their ownership interests and, somehow, by SVR's alleged failure to pay maintenance fees to the Defendants. (See Amended Counterclaim, ¶ 87). By the very nature of the MMPA, the cause of action in Count III will depend on different representations allegedly made by the

8

Count III Defendants to the different owners over time, and will be contingent on whether each owner actually heard the representation, and what damages resulted to each owner, if any. Because the claim asserted and the relief requested requires the participation of individual members in the lawsuit, the Defendants lack standing to bring the claims in Count III.

Second, to the extent the allegations in Count III are based on SVR's alleged non-payment of maintenance fees to the Defendants, the allegations in Count III fail to state a claim for which relief may be granted under the MMPA. If a plaintiff never pays anything to the defendant, then Plaintiff cannot plead the essential element of ascertainable loss necessary to bring an action under the MMPA. *Freeman Health Sys. v. Wass*, 124 S.W.3d 504, 508 (Mo. Ct. App. 2004) (affirming dismissal of action where plaintiff who challenged bills for medical goods and services had not paid anything and therefore had no ascertainable loss). Merely incurring an obligation to pay does not amount to ascertainable loss. See *Roberts v. BJC Health System*, 391 S.W.3d 433 (Mo. 2013) (patients had no actionable claim against hospitals involved in fraudulent billing by physician, as patients never paid anything as a result of the misconduct involved).

Defendants allege that the Unit Owners have been damaged because the maintenance fees have not been forwarded to the Defendants. There is no allegation that the Unit Owners have paid anything for any service they did not receive, but only that payments have not been made to the Defendants. (See Amended Counterclaim, ¶ 87). Such is not an ascertainable loss. Therefore to the extent Count III fails to allege ascertainable loss by the owners as required under the MMPA, it should be dismissed.

### D. Count IV of the Amended Counterclaims Should be Dismissed

The Defendants' Count IV must be dismissed because injunctive relief is a remedy, not an independent cause of action. *See Fletcher v. Conoco Pipe Line Co.*, 129 F.Supp.2d 1255, 1264 (W.D. Mo. 2001) ("The Court agrees that there is no 'injunctive' cause of action under Missouri law or federal law. Instead, Plaintiffs must allege some wrongful conduct on the part of Defendant for which their requested injunction is an appropriate remedy.") and *Jackson County, Mo. ex rel. Nixon v. MERSCORP, Inc.*, 915 F.Supp.2d 1064, 1072 (W.D. Mo. 2013) (same). Here, Count IV purports to set forth an independent cause of action for a "Permanent Injunction," which is improper under applicable Missouri and federal law. Further, because the Defendants have not plead a cause of action that can survive dismissal, there is no underlying wrongful conduct upon which the remedy of injunction could be based. Under either scenario, Count IV must be dismissed.

### E. Count V of the Amended Counterclaims Should be Dismissed

For any action filed under the Declaratory Judgment Act to be proper there must be a justiciable controversy. *State ex rel. Nixon v. American Tobacco Co.*, 34 S.W.3d 122, 128 (Mo. banc 2000). A justiciable controversy exists where the plaintiff has a legally protectable interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination. *Missouri Health Care Ass'n v. Attorney General of the State of Missouri*, 953 S.W.2d 617, 620 (Mo. banc 1997).

"The petition must present a 'real, substantial, presently existing controversy admitting of specific relief as distinguished from an advisory or hypothetical situation.' " *George v. Brewer*,

10

Case 6:15-cv-03218-BCW   Document 34   Filed 06/30/15   Page 10 of 11

62 S.W.3d 106, 109 (Mo. App. S.D. 2001). There must be a sufficiently complete state of facts presenting issues ripe for determination."). *Id.* at 370. Where there is no justiciable controversy, it is an abuse of discretion for the trial court to undertake a declaratory judgment action. *City of Springfield v. Events Publ'g Co., L.L.C.,* 951 S.W.2d 366, 370 (Mo. App. S.D. 1997).

The Defendants fail to allege that there is a real, substantial, presently existing controversy pursuant to the Uniform Condominium Act, Section 448.3-103(4), as cited in Paragraph 104 of the Amended Complaint. The Defendants' pleadings in Count IV are so devoid of information that SVR and Third-Party Defendants have not been reasonably advised of the event being sued upon or the relief requested[2]. As such, it must be dismissed.

**WHEREFORE**, Plaintiff and Third-Party Defendant Alex Hodges request that the Court enter an Order dismissing in its entirety Defendants' Amended Counterclaim, and/or that the Court order Defendants to make a more definite statement, and for such other and further relief as the Court may deem just and proper.

NEALE & NEWMAN, L.L.P.

By: _____
Daniel K. Wooten, #48061
Britton D. Jobe, #62084
American National Center
1949 East Sunshine, Suite 1-130
Springfield, Missouri 65804
Telephone:  (417) 882-9090
Facsimile:  (417) 882-2529
Email:  dwooten@nnlaw.com
  bjobe@nnlaw.com
***ATTORNEYS FOR PLAINTIFF AND
THIRD-PARTY DEFENDANT ALEX HODGES***

---

[2] To the extent that Count IV is construed so as to include a claim against any party other than SVR, such party must be dismissed because they are not parties to the applicable condominium documents or to the Transfer and Turnover Agreements.

11